UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ALVIN HOWARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:10-CV-13 CAS |
| | ) | |
| LEO A. WHITESIDE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on defendant Patricia Whiteside's motion to dismiss plaintiff's claims against her in her individual capacity, under Federal Rule of Civil Procedure 12(b)(6). Plaintiff Alan Howard opposes the motion and it is fully briefed. For the following reasons, the Court will deny motion to dismiss.

**Background**

This is an action for declaratory judgment under 28 U.S.C. § 2201 and the Missouri Uniform Fraudulent Transfer Act, Mo. Rev. Stat. §§ 428.005, et seq. (2000). Plaintiff obtained a judgment (the "Judgment") against defendant Missouri Bone and Joint Center, Inc. ("MBJC") on March 26, 2009 in a separate action in this Court in Case No. 4:05-CV-1333 HEA (the "underlying case"). Plaintiff has been unable to collect the Judgment and brings this action in an attempt to further his efforts to do so.

In this action, plaintiff sued, among others, Patricia Whiteside ("Whiteside") individually and in her capacity as Trustee of the Patricia Whiteside Revocable Trust dated 12-20-1987 (the "Trust"). The Complaint alleges that Whiteside colluded with her spouse, defendant Leo A. Whiteside, to create a fraudulent loan and make it appear that all assets of MBJC were completely

encumbered by the Trust in order to defraud MBJC's future creditors.  Plaintiff seeks a declaration that, among other things, Whiteside's assets are available to satisfy the Judgment.

**Legal Standard**

The purpose of a motion to dismiss for failure to state a claim is to test the legal sufficiency of the complaint.  The Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), that a complaint must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face."  Id. at 560 (abrogating the traditional 12(b)(6) "no set of facts" standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  A plaintiff need not provide specific facts in support of his allegations, Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam), but "must include sufficient factual information to provide the 'grounds' on which the claim rests, and to raise a right to relief above a speculative level."  Schaaf v. Residential Funding Corp., 517 F.3d 544, 549 (8th Cir.), cert. denied, 129 S. Ct. 222 (2008) (quoting Twombly, 550 U.S. at 555-56 & n.3).  A complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory."  Twombly, 550 U.S. at 562 (quoted case omitted). This obligation requires a plaintiff to plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id. at 555.  The standard "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the claim or element]."  Id. at 556.

The Eighth Circuit recently instructed that "[t]o survive a motion to dismiss, a claim must be facially plausible, meaning that the 'factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  Cole v. Homier Dist. Co., Inc., 2010 WL 1171741, at * 2, __ F.3d __ (8th Cir. Mar. 29, 2010) (quoting Ashcroft v. Iqbal, 129 S. Ct.

1937, 1949 (2009)).  To determine whether a claim is facially plausible, a court must "'accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party.'"  Id. (quoting Coons v. Mineta, 410 F.3d 1036, 1039 (8th Cir. 2005)).  If a court "can infer from those factual allegations no more than a 'mere possibility of misconduct,' the complaint must be dismissed."  Id. (quoting Iqbal, 129 S. Ct. at 1950)).

**Discussion**

Whiteside moves to dismiss the claims against her in her individual capacity.  Only Counts II and III of the Complaint seek relief against Whiteside.  Count II seeks a declaration that Whiteside colluded with others to create a fraudulent loan in order to defraud plaintiff, that she is liable to plaintiff for the Judgment in the underlying case, and that her assets are available to satisfy the Judgment.  Count III asserts a claim against Whiteside for violation of the Missouri Uniform Fraudulent Transfer Act ("MUFTA").  Count III alleges that Whiteside was an "insider" within the meaning of MUFTA and that the Trust fraudulently loaned $1.8 million dollars to MBJC in return for a promissory note, a security interest and liens, in order to defraud plaintiff as a future creditor of MBJC.

    A.  Count II

In support of dismissal, Whiteside states that the fifty-three averment Complaint only refers to her four times, and argues that none of the factual assertions suggest wrongdoing in her individual capacity.  Whiteside contends that in Count II, the only mention of her in her individual capacity is a reference "to what the plaintiff preposterously calls 'collusion' with [defendant Leo] Whiteside and a 'fraudulent loan and obligation' between the Trust" and MBJC.  Mot. to Dismiss at 3.

Whiteside states that the plaintiffs in Twombly similarly pled collusion but in greater detail than plaintiff does in this case, but the Court in Twombly found that complaint was deficient under

3

Rule 8 and noted that the plaintiffs' assertion of an unlawful agreement was a legal conclusion which was not entitled to the assumption of truth.[1]  Whiteside contends that plaintiff's Count II should similarly be dismissed.  Whiteside asserts even that if the Court were to accept plaintiff's claim of collusion as a fact, the allegation would go to Whiteside in her capacity as trustee of the Trust, not as an individual.

Plaintiff responds that the Twombly standard is inapplicable here, because in Twombly the Supreme Court was analyzing whether the plaintiff adequately pleaded a claim of antitrust collusion under Section 1 of the Sherman Antitrust Act, and the standard does not apply to a claim for relief under the Declaratory Judgment Act.  Plaintiff further responds that to avoid dismissal of Count II, he need only show that an adequate claim has been pleaded under the Declaratory Judgment Act by establishing that an actual controversy exists between plaintiff and Whiteside.  Plaintiff states that such a controversy exists because when he attempted to collect on the Judgment, the Trust intervened to assert a priority of lien over all of MBJC's assets based on the $1.8 million loan from the Trust, which is controlled by Whiteside, to MBJC, which is controlled by her spouse, Leo Whiteside.  Plaintiff contends that Whiteside is personally liable for the Judgment because she colluded with Leo Whiteside to encumber all of MBJC's assets after learning of the underlying suit, and that Whiteside is in complete control of the Trust and can terminate it at any time because it is a revocable trust.[2]

---

[1] In Twombly, the plaintiffs "flatly pleaded that the defendants 'had entered into a contract, combination or conspiracy to prevent competitive entry . . . ha[d] agreed not to complete with one another . . . and inflate prices." Iqbal, 129 S. Ct. at 950 (quoting Twombly, 127 S. Ct. at 1962-63).

[2] The Court notes that the Complaint does not contain any factual allegations concerning who has control of the Trust, or whether Whiteside is the sole trustee of the Trust.

Whiteside replies that the Twombly standard applies in this case because she is challenging the merits of the Complaint, and states this Court previously rejected plaintiff's argument that declaratory judgment actions are exempt from that standard when it granted defendant Leo Whiteside's motion to dismiss Count I of the Complaint against him.  See Mem. and Order of Mar. 4, 2010 at 5 (Doc. 22) ("Plaintiff's assertion that an actual controversy exists between him and Whiteside does not establish that plaintiff has stated a claim upon which relief can be granted.").

Whiteside further replies that even when the Complaint is viewed in the light most favorable to plaintiff, it does not contain a single factual assertion suggesting wrongdoing in her individual capacity, and ignores the distinction between Whiteside's actions and potential liability as Trustee and any actions she took in her individual capacity.  Whiteside asserts without citation to any legal authority that "[t]hese are two completely separate and legally protected individuals/entities.  The alleged wrongdoing of the Trustee does not under any legal theory alleged by the Plaintiff cause liability of Ms. Whiteside in her personal capacity."  Reply at 3.

The Court examines the Complaint to determine whether its allegations are sufficient to plead enough facts to state a claim to relief that is plausible on its face.  The Supreme Court made it clear in Iqbal, 129 S. Ct. 1937, that the Twombly standard also applies outside the context of antitrust law. Plaintiff must meet the Twombly standard to avoid dismissal of his claim for declaratory judgment in Count II, because the Complaint is being attacked on the merits for failure to state a claim upon which relief can be granted.  This type of merits challenge is distinguishable from the situation where a defendant moves to dismiss a declaratory judgment action on the basis that the action is not justiciable because it does not present an actual case or controversy.  See, e.g., Marine Equip. Mgmt. Co v. United States, 4 F.3d 643, 646 (8th Cir. 1993) ("The test to determine whether there is an actual controversy within the meaning of the Declaratory Judgment Act is

5

whether 'there is a substantial controversy between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'") (quoted case omitted).

The Complaint alleges that Whiteside is the spouse of defendant Leo Whiteside, and that shortly after Leo Whiteside learned of the underlying case in August 2005, the Trust loaned Leo Whiteside and/or MBJC the sum of $1.8 million in September 2005 in return for a note and certain security interests (Complaint, ¶¶ 10, 36). The Complaint alleges that the Trust entered into the $1.8 million loan transaction in order to shield MBJC's assets from the underlying case, as MBJC and Leo Whiteside did not have insurance coverage for the injury plaintiff asserted in the underlying case (id., ¶¶ 39-40), and that "the defendants" acted in concert to defraud plaintiff as a future creditor of MBJC. (Id., ¶ 38). The Complaint alleges that Whiteside and Leo Whiteside colluded to "create[] a fraudulent loan and obligation to make it appear that all assets of MBJC were completely encumbered by the Trust." (Id., ¶ 41).

Whiteside's primary argument in her motion to dismiss is that there are few allegations against her personally, her actions as trustee of the Trust are completely separate from her individual actions, and she can have no individual liability for actions taken in her capacity as trustee. The latter assertions are incorrect. Under Missouri law, a trustee is personally liable "for torts committed in the course of administering a trust, or for obligations arising from ownership or control of trust property, . . . , only if the trustee if personally at fault." § 456.10-1010.2.[3] Because Whiteside has potential personal liability under Missouri law for any tortious actions taken while acting in her

---

[3]Neither party cited this statute to the Court.

capacity as trustee, the Court finds it appropriate in resolving this motion to also consider plaintiff's allegations concerning Whiteside's actions as trustee of the Trust.

The Court concludes that plaintiff's factual allegations as set forth above, although not detailed, are sufficient to raise a right to relief above the speculative level when considered in the light most favorable to plaintiff and when all reasonable inferences are drawn in his favor. See Cole, 2010 WL 1171741 at * 2. Whiteside's motion to dismiss Count II should therefore be denied.

B. Count III

Whiteside argues that Count III of the Complaint fails to state a claim against her because it alleges only that she is an "insider" as defined by MUFTA (Complaint, ¶ 49), who after learning about the underlying case fraudulently transferred $1.8 million from the Trust to MBJC in exchange for an "obligation" from MBJC (id., ¶ 52.c), and that as Trustee of the Trust she had the power to terminate the Trust at any time (id.). Whiteside asserts that Counts III is unsubstantiated and fails to meet the Twombly standard because it contains a legal conclusion and does not plead factual allegations. Whiteside also asserts that Count III "is unambiguously captioned against Ms. Whiteside as the 'trustee' and not 'individually,'" Mot. to Dism. at 5, and therefore explicitly fails to state a claim against her as an individual.

Plaintiff responds that Count III alleges, within the meaning of MUFTA, that the underlying case is a "claim," plaintiff is a "creditor," defendants MBJC and Leo Whiteside are "debtors," Leo Whiteside and Patricia Whiteside are "insiders," the promissory note, security interest and any alleged liens based thereon are "transfers," and that the "loan" was fraudulent, in part because the loan was made to an insider, and that as trustee of a revocable living trust, Patricia Whiteside had the power to terminate the Trust at any time. Plaintiff states, "It is this individual capacity--[defendant Patricia Whiteside's] personal collusion with [defendant Leo] Whiteside and the use of

7

her personal revocable trust over which she has complete control--that forms the basis for her individual liability." Response at 6.

Whiteside replies that even when the facts alleged in the Complaint are taken as true, there are no factual assertions suggesting wrongdoing in her individual capacity, as opposed to her legally distinct capacity as trustee of the Trust. Whiteside also states that plaintiff's claim she can personally and individually receive the assets of the Trust is not supported by evidence.

The Missouri Uniform Fraudulent Transfer Act consists of §§ 428.005 to 428.059. Behr v. Bird Way, Inc., 923 S.W.3d 470, 473 n.3 (Mo. Ct. App. 1996). Under § 428.024,

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation: (1) With actual intent to hinder, delay, or defraud any creditor of the debtor . . . ."

§ 428.024.1. "The essential elements of a fraudulent conveyance include (1) a conveyance or assignment (2) of goods, chattels, things in action or interest in land (3) with the intent to hinder, delay or defraud creditors." Behr, 923 S.W.3d at 473. "Because intent is a difficult element to prove, Missouri courts have recognized that there are certain circumstances referred to as badges of fraud which so frequently attend conveyances to hinder, delay or defraud creditors that they may be employed to determine the presence of fraud." Id. (quotation marks and quoted case omitted).

MUFTA lists eleven factors that may be given consideration in determining the actual intent to hinder, delay or defraud a creditor under §428.024.1:

> In determining actual intent under subdivision (1) of subsection 1 of this section, consideration may be given, among other factors, to whether: (1) The transfer or obligation was to an insider; (2) The debtor retained possession or control of the property transferred after the transfer; (3) The transfer or obligation was disclosed or concealed; (4) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (5) The transfer was of substantially all the debtor's assets; (6) The debtor absconded; (7) The debtor removed or concealed assets; (8) The value of the consideration received by the debtor was reasonably

equivalent to the value of the asset transferred or the amount of the obligation incurred; (9) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation incurred; (10) The transfer occurred shortly before or shortly after a substantial debt was incurred; and (11) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

§ 428.024.2.

In paragraphs 49 and 52(c) of the Complaint, plaintiff alleges that Whiteside is an "insider" under MUFTA, including by virtue of her status as a relative of a 'general partner, director, officer, or person in control of'" MBJC. See § 428.009(7). These allegations are made against Whiteside in her individual capacity.[4] Other allegations of the Complaint, as discussed above and incorporated by reference into Count III, assert that (1) Whiteside is the spouse of defendant Leo Whiteside and trustee of the Trust, (2) shortly after Leo Whiteside learned of the underlying case, the Trust loaned Leo Whiteside and/or MBJC the sum of $1.8 million in return for a note and certain security interests, (3) the loan was made to shield MBJC's assets from the underlying case, as MBJC and Leo Whiteside did not have insurance coverage for the injury plaintiff asserted in the underlying case, (4) "the defendants" acted in concert to defraud plaintiff as a future creditor of MBJC, and (5) Whiteside and Leo Whiteside colluded to "create[] a fraudulent loan and obligation to make it appear that all assets of MBJC were completely encumbered by the Trust." (Complaint, ¶ 41).[5]

---

[4]The Court is unable to agree with Whiteside's assertion that Count III "is unambiguously captioned against Ms. Whiteside as the 'trustee' and not 'individually'" and therefore does not assert a claim against her an individual. Count III is titled, "Missouri Uniform Fraudulent Transfer Act Against All Defendants (§ 428.005 et seq., R.S.Mo.)". To the extent Count III can be said to have a "caption," it would appear to be directed against each of the defendants and, as stated above, Count III includes allegations against Whiteside as an individual.

[5]In paragraph 52(c), plaintiff also alleges that as trustee of a revocable living trust, Patricia Whiteside had the power to terminate the Trust at any time, and plaintiff argues this point in his Response. Although this allegation is made against Whiteside in her capacity as trustee, because there is potential personal liability for tortious actions taken as a trustee, it could be considered

9

The Court finds these allegations sufficient, when all reasonable inferences are drawn in plaintiff's favor, to plead "enough facts to state a claim to relief that is plausible on its face" under MUFTA. See Twombly, 550 U.S. at 560. Whiteside's motion to dismiss Count III should also be denied.

**Conclusion**

For the foregoing reasons, the Court will deny defendant Patricia Whiteside's motion to dismiss plaintiff's claims against her in her individual capacity, for failure to state a claim upon which relief can be granted.

Accordingly,

**IT IS HEREBY ORDERED** that defendant Patricia Whiteside's motion to dismiss the Complaint against her, in her individual capacity, is **DENIED**. [Doc. 24]


_____
**CHARLES A. SHAW
UNITED STATES DISTRICT JUDGE**

Dated this   13th   day of April, 2010.

---

against Whiteside as an individual. It must be noted, however, that plaintiff's allegation Whiteside as trustee has the ability to terminate the Trust at any time is not supported by any of the three statutes plaintiff cites in his Response. Section 456.1-103(22), Mo. Rev. Stat., states that a revocable trust may be revoked by the settlor thereof without the consent of the trustee. Section 456.1-103(23) defines "settlor" as "a person, including a testator, who creates, or contributes property to, a trust." Similarly, section 456.6-602 provides that the "settlor" may revoke a revocable trust. The Complaint does not allege that Whiteside is the settlor of the Trust, or that she created or contributed property to the Trust.

10